# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| DENNIS ANGELO,<br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant. | Case No. 1:12-cv-169<br>Spiegel, J.<br>Litkovitz, M.J.<br><br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the Commissioner's memorandum in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in May 2008, alleging disability since October 31, 2007, due to "arthritis resulting from injuries, shortness of breath, [and] diabetes." (Tr. 165). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Christopher B. McNeil. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On September 8, 2010, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements for disability insurance benefits on his alleged onset date of October 31, 2007, and continue[d] to meet them through at least September 30, 2009.
>
> 2. There is no evidence that the [plaintiff] has engaged in any substantial gainful activity since his alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: chronic left shoulder pain due to residuals for an open reduction and internal fixation, left scapula pain, left-sided rib pain residual to rib fractures, chronic low back pain without radiculopathy, and chronic neck pain without radiculopathy[1] (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. Careful consideration of the entire record shows that the [plaintiff] has the

---

[1] Plaintiff was struck by a car while riding his bicycle in August 2003. (Tr. 303). He sustained injuries to his scapula, shoulder, clavicle, rib cage, lung, neck and low back, and he underwent surgery on the left scapula. (Tr. 302). He treated with a pain management specialist, Dr. Howard Schertzinger, M.D., from October 2003 to August 2004 for chronic anterior chest wall pain, left shoulder pain, and neck pain. (Tr. 294-304).

residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c), with the nonexertional limitations set forth [in the ALJ's decision].[2]

6. The [plaintiff] is capable of performing past relevant work as a house painter. This work does not require the performance of work-related activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 31, 2007, through the date of [the ALJ's] decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 11-16).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] The ALJ found plaintiff "can perform medium work, lifting and carrying 50 pounds occasionally and 25 pounds frequently. He could push and pull 25 pounds with hand or foot controls, stand 6 hours a workday, walk 6 hours a workday, and sit 6 hours a workday. He cannot stoop, crouch or climb ladders, ropes, or scaffolds more than frequently." (Tr. 15).

[3] In the alternative, the ALJ found based on the testimony of the VE that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform considering his age (50 at the time of the ALJ decision), education, work experience and residual functional capacity. (Tr. 15-16). The ALJ listed the following unskilled jobs as examples of the jobs plaintiff could perform: medium stock handler (4,000 jobs regionally and 600,000 jobs nationally), medium packager (1,700 jobs regionally and 160,000 jobs nationally), light machine operator (3,500 jobs regionally and 300,000 jobs nationally), and light packer (3,500 jobs regionally and 300,000 jobs nationally). (Tr. 16).

4

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized in plaintiff's Statement of Errors and will not be repeated here. (Doc. 11 at 2-5). Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff argues that: (1) the ALJ erred by failing to properly identify plaintiff's "severe" and "non-severe" impairments and by failing to incorporate all of the limitations imposed by plaintiff's impairments in the RFC finding; and (2) the ALJ improperly evaluated plaintiff's credibility.

### 1. The ALJ's RFC finding, which accounted for limitations resulting from plaintiff's "severe" and "non-severe" impairments, is supported by substantial evidence.

A severe impairment or combination of impairments is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921.

5

Basic work activities relate to the abilities necessary to perform most jobs, such as the ability to perform physical functions. 20 C.F.R. §§ 404.1521(b), 416.921(b). In the physical context, a severe impairment or combination of impairments means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. *See* 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element that plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers v. Commissioner*, 486 F.3d 234, 243 n.2 (6th Cir. 2007).

Here, the ALJ found "severe" impairments of chronic left shoulder pain due to residuals from prior procedures, left scapula pain, left-sided rib pain residual to rib fractures, chronic low back pain, and chronic neck pain. (Tr. 11). Plaintiff alleges the RFC finding for medium work is not supported by substantial evidence because the ALJ failed to incorporate specific, additional limitations imposed by these severe impairments. (Doc. 11 at 11-12). Plaintiff contends the ALJ erred by not imposing greater lifting restrictions than those required for medium work, a restriction against reaching with the left upper extremity, and a sit/stand option to accommodate his severe chronic shoulder, rib, neck and back pain. (Doc. 11 at 11-12). Plaintiff alleges these restrictions are supported by his testimony and statements in the record,

6

and by objective findings showing he has a deformity of the clavicle, healed fractures of the ribs and scapula with a metal plate and screws over the left scapula, and a compression fracture at the T8 level of the spine. (Doc. 11 at 10-12, citing Tr. 226, 303, 327-28). The Court disagrees.

Plaintiff points to no evidence showing any physical restrictions resulting from the residuals of his healed injuries or his stable mild compression fracture, and no physician of record imposed any functional limitations in connection with these findings. To the contrary, the consultative examining physician, Dr. Phillip Swedberg, M.D., and the state agency reviewing physician, Dr. W. Jerry McCloud, M.D., assessed plaintiff as capable of performing medium work with restrictions only as to stooping, crouching and climbing.[4] (Tr. 217-226, 250-57). These assessments are supported by the physicians' objective findings. Dr. Swedberg's September 2008 examination findings were essentially normal, and findings on x-rays reviewed by Dr. Swedberg showed there were "old" fractures of the scapula, clavicle and rib on the right side, but no acute findings; the head of the humerus was "in good position" despite an old fracture of the scapula; and the lumbar spine was "normal." (Tr. 226). Dr. McCloud stated that plaintiff's physical examination was within normal limits, plaintiff did not seek treatment, and plaintiff did not take any medication, including over-the-counter medication, for pain relief. (Tr. 255).

Plaintiff contends the ALJ was not entitled to rely on the September and October 2008 assessments of Drs. Swedberg and McCloud to find he could perform medium work with postural limitations because these physicians did not have access to "most of the medical evidence"; they were "not aware of the more pertinent objective findings"; and their opinions

---

[4]Dr. Swedberg opined plaintiff appeared "capable of performing a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects" and had no difficulty reaching, grasping and handling objects, and no visual limitations. (Tr. 225). State agency reviewing physician Dr. McCloud opined in his October 2008 report that plaintiff had the RFC for medium work, except he was restricted to frequent climbing,

were "based on only a small portion of the record." (Doc. 11 at 12; Doc. 17 at 4). Plaintiff states that his insured status did not expire until September 2009, nearly a year after these physicians issued their reports, and the record includes medical evidence through March 2010. (*Id.*). However, the only new medical evidence plaintiff cites are records from an emergency room visit in March 2010 showing complaints of back and neck pain. (Tr. 336-42). Those records reflect normal neurological and musculoskeletal findings. Plaintiff does not point to any other pertinent medical evidence that Drs. Swedberg and McCloud did not review, and their opinions are not contradicted by any treating source's medical opinion. Accordingly, plaintiff has not shown that the ALJ erred by relying on Drs. Swedberg and McCloud's assessments in formulating an RFC for medium work with postural restrictions. The ALJ's decision regarding the limitations imposed by plaintiff's chronic pain finds substantial support in the record.

Plaintiff also contends the ALJ erred by failing to classify his diabetes and depression as "severe" impairments and by failing to account for the limitations imposed by these impairments in the RFC finding. (*Id.*). According to plaintiff, he has suffered from uncontrolled diabetes since at least 2008 as demonstrated by his high glucose levels from 2008 to 2010; it is a "commonly known medical fact" that uncontrolled diabetes often leads to peripheral neuropathy and other symptoms which would have more than a minimal effect on an individual's ability to work, including balance problems, dizzy spells, and blurred vision; and his uncontrolled diabetes has in fact caused him to suffer diabetic neuropathy and burning sensations and pain in his feet and ankles, leading to difficulty walking. (Doc. 11 at 13). However, plaintiff relies primarily on his subjective complaints to show the limiting effects of his diabetes. The record contains few clinical and objective medical findings demonstrating that plaintiff suffers symptoms from his diabetes, and none that show he suffers debilitating

stooping and crouching. (Tr. 252).

symptoms. University Hospital records from July 2008 include a finding that plaintiff was likely developing some diabetic neuropathy in his feet and he therefore should be evaluated for long-term treatment of noninsulin dependent diabetes. (Tr. 312-14). Plaintiff was subsequently followed for his diabetes at the Good Samaritan Hospital Medical Center (GSHMC). (Tr. 268-93, 333-35). Although plaintiff complained of neuropathy during an examination at GSHMC in June 2009, the examination findings at that time were normal (Tr. 275-76), and a diabetic foot exam conducted at GSHMC in August 2009 was likewise normal. (Tr. 273-74). In addition to a lack of positive findings on examination, no medical source imposed any functional limitations to account for symptoms of diabetic neuropathy. In addition, plaintiff points to no evidence in the record to show he suffers from dizzy spells. Plaintiff relies solely on his self-reports of unclear vision to the Agency to document vision problems purportedly resulting from his diabetes. (Doc. 11 at 13). Also, no medical source imposed any functional limitations to account for such symptoms. Accordingly, the ALJ did not err by failing to incorporate into the RFC finding standing and walking limitations, a sit/stand option, and restrictions against hazards and climbing to account for plaintiff's diabetes. *See Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988) (relevant consideration in disability case is not claimant's diagnoses, but functional limitations caused by impairments).

Nor did the ALJ err by finding plaintiff's depression was not a severe impairment or by failing to account for this impairment in the RFC finding.[5] (Doc. 11 at 13-14). Plaintiff relies solely on his self-reported psychological symptoms to argue his depression causes impaired concentration and memory, which would in turn be magnified by chronic pain. (*Id.* at 14 -

---

[5] The ALJ gave "great weight" to the opinions of the consultative examining psychologist, Dr. William Vonderhaar, Ph.D., (Tr. 227-235), and the state agency reviewing psychologist, Dr. Marianne Collins, Ph.D. (Tr. 236-249). Dr. Vonderhaar diagnosed plaintiff with a depressive disorder, NOS, and alcohol dependence, but assessed no more than mild limitations in any area of mental functioning. (Tr. 234, 235). Dr. Collins found plaintiff's mental difficulties

9

"pain itself can interfere with the ability to concentrate; the combination of the chronic pain and depression creates a much greater concentration deficit than either one alone."). However, plaintiff cites no evidence of record to show his concentration is more than mildly impaired or that he suffers any functional restrictions as a result of his mild mental limitations. Accordingly, the ALJ did not err by not including limitations in the RFC finding to account for plaintiff's mild mental impairments. *See Foster*, 853 F.2d at 488-89.

Plaintiff also contends the ALJ erred by failing to completely address whether his Hepatitis C and knee pain are "severe" or non-severe impairments and by failing to account for either impairment in the RFC finding. (Doc. 11 at 14). First, plaintiff argues it is "clear that [he] would be more than minimally affected by his Hepatitis C in a work setting" because he testified he has daily abdominal pain (Tr. 34), there are two reports of stomach distention on physical examination in the record (Tr. 277, 281), and lab results show his liver enzymes are abnormal. (Tr. 285, 329-32). (Doc. 11 at 14). The ALJ acknowledged that plaintiff had elevated liver function studies and blood work consistent with Hepatitis C. (Tr. 12, citing Tr. 317-332). However, the ALJ was not required to incorporate any limitations into the RFC finding to account for plaintiff's Hepatitis C. There is no indication in the record that plaintiff's Hepatitis C causes debilitating symptoms, and no medical provider imposed any functional limitations resulting from plaintiff's Hepatitis C. Plaintiff's diagnosis of Hepatitis C, without any related evidence showing functional restrictions, does not denote significant limitations on the ability to perform basic work activities. *See Foster*, 853 F.2d at 488-89.

Second, plaintiff asserts the ALJ erred by failing to evaluate his knee impairment because the record shows he complained of knee pain on a few occasions. (Doc. 11 at 14, citing Tr. 217-27, 230, 294-304). However, plaintiff points to no objective medical evidence that

were mild. (Tr. 246, 248).                                              10

documents the existence of a knee impairment. As there is no objective evidence to show plaintiff has a medically determinable knee impairment, or that a medical provider imposed any functional limitations as a result of a knee impairment, the ALJ did not err by failing to discuss plaintiff's complaints of knee pain. *See* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. . . ."); *Foster*, 853 F.2d at 488-89.

The ALJ considered plaintiff's nonsevere impairments together with his severe impairments in the remaining steps of the sequential evaluation process and properly accounted for the limitations imposed by both. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e). Because the ALJ considered all of plaintiff's impairments (both severe and non-severe) in determining plaintiff's RFC, any alleged failure to characterize certain impairments as "severe" at step two of the sequential evaluation is legally irrelevant and constitutes harmless error. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2010) (citing *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). As substantial evidence supports the ALJ's severity and RFC findings, plaintiff's first assignment of error should be overruled.

**2. The ALJ's credibility determination is supported by substantial evidence.**

Plaintiff argues the ALJ erred in assessing his credibility. (Doc. 11 at 15-19). Plaintiff asserts the ALJ erred by: relying on several reasons for discounting his credibility which are not supported by substantial evidence; failing to specify the activities of daily living that the ALJ considered to be inconsistent with plaintiff's allegations; placing undue emphasis on plaintiff's lack of compliance with treatment recommendations or medications; and

11

mischaracterizing the medical evidence as demonstrating overall normal physical examinations and minimal x-ray findings. (*Id.* at 18). Plaintiff argues that his pain and symptoms are attributable to medically determinable impairments and his allegations are consistent with the objective findings, including reduced range of motion of the lumbar spine and left shoulder, a deformed collar bone, x-rays showing significant surgical repair of the left shoulder, multiple rib fractures, decreased foot sensation, abdominal distension, and the need for opiate medication to control his pain. (*Id.* at 19; Doc. 17 at 6-7). Plaintiff argues that none of the rationales provided by the ALJ for discounting his credibility withstand scrutiny. (*Id.* at 19).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

Social Security Regulation 96-7p describes the requirements by which the ALJ must abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. (emphasis added).

The ALJ in this case gave a thorough account of the evidence is assessing the credibility of plaintiff's allegations of pain and limitations. (Tr. 13-15). The ALJ considered the inconsistency between plaintiff's testimony as to his extreme symptoms and his reported activities of daily living and the treatment notes (Tr. 14); plaintiff's inconsistent reports of alcohol and marijuana use (*Id.*); plaintiff's history of noncompliance with treatment and failure to seek treatment (*Id.*); the absence of objective medical findings on physical examination and the lack of significant x-ray results (Tr. 15); and examining and reviewing physicians' opinions that plaintiff is capable of performing medium work. (*Id.*). Plaintiff has not shown the ALJ erred by discounting his credibility based on these factors or that the ALJ's credibility finding is not supported by substantial evidence.

Plaintiff argues that the ALJ placed "undue emphasis" on his history of noncompliance with treatment and other recommendations from his physicians. (Doc. 17 at 7). An ALJ may find a claimant's statements "less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *See* SSR 96-7p, 1996 WL 374186, at *7. Plaintiff recognizes that a claimant's failure to seek treatment for a period of time may be a factor that weighs against a claimant's credibility, unless the claimant is unable to afford or obtain treatment for his condition. (Doc. 11 at 11, citing *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (if claimant cannot afford prescribed treatment or medicine and can find no way to obtain it, condition that is disabling in fact continues to be disabling in law)). Plaintiff suggests that is the situation here, and he offers a number of reasons in his Statement of Errors for why he has not been compliant with treatment and with his physicians' recommendations. (Doc. 11 at 17-18). However, plaintiff's

explanations do not demonstrate that he has been unable to obtain medical treatment, and plaintiff in fact acknowledges he has been followed at GSHMC since November 2008 for his diabetes and other medical issues. (*See* Tr. 268-93, 333-35). In addition, plaintiff has not addressed his failure to comply with treatment recommendations such as smoking cessation. Plaintiff therefore has not shown that the ALJ erred by discounting his credibility based on his failure to obtain treatment and to comply with his physicians' treatment recommendations.

Plaintiff also argues the ALJ's decision does not clearly show what evidence the ALJ relied on to find plaintiff's activities of daily living were inconsistent with his allegations. Plaintiff therefore contends the ALJ's finding in this respect is so vague as to be unreviewable. (Doc. 11 at 17). However, in his decision, the ALJ set forth the testimony and the activities of daily living on which he relied in making this finding. (Tr. 14). The basis for the ALJ's finding that plaintiff's allegations were inconsistent with his activities of daily living is therefore clear. The ALJ did not err in this regard.

Plaintiff further contends the ALJ mischaracterized the medical evidence when he stated the physical examination results were normal overall and x-ray findings were minimal. (Doc. 11 at 18, citing Tr. 15). In support of this argument, plaintiff points to some positive findings in the record.[6] (*Id.* at 18). However, none of the cited evidence shows the ALJ improperly minimized the severity of the objective medical findings. (Tr. 11-12).

The ALJ's decision sets forth in detail the reasons for his credibility finding and reflects consideration of the required factors in determining plaintiff's credibility, including his

---

[6] In his reply brief, plaintiff concedes that many of the physical findings made by his treating physicians during the relevant time period were unremarkable, but he speculates this was due to the failure of less experienced resident physicians to examine his musculoskeletal system and to document objective signs. (Doc. 17 at 3, 6). Plaintiff did not raise this issue in his Statement of Errors and may not raise new issues for the first time in his reply brief. *See Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). *See also Bishop v. Oakstone Academy*, 477 F. Supp.2d 876, 889 (S.D. Ohio 2007). The Court therefore declines to review this issue. Further, this new reason proffered by

14

allegations of disabling pain. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter. Plaintiff's second assignment of error should therefore be overruled.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED**.

Date: 2/28/13

Karen L. Litkovitz
United States Magistrate Judge

---

counsel for the lack of objective findings is speculative and does not in any way cast doubt on the validity of the ALJ's credibility finding.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS ANGELO,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-169
Spiegel, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).